# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| VESTIN REALTY MORTGAGE II, INC., for itself and a successor to Vestin Fund II, LLC, VESTIN MORTGAGE, INC., VESTIN GROUP, INC., and MICHAEL V. SHUSTEK, | CASE NO. 08-CV-2011-AJB (MDD) |
|---|---|
| Plaintiffs, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | [Doc. No. 56] |
| KENNETH D. KLAAS, | |
| Defendant. | |

Defendant Kenneth Klaas seeks summary judgment on each of Plaintiffs' claims.[1] Having reviewed the briefs and exhibits, the Court **GRANTS** his motion.

## Background

In December 2000, Plaintiff Vestin Mortgage, Inc. formed a limited-liability company ("LLC") pursuant to Nevada law. Def.'s Ex. 2 § 1.1. The LLC was named Vestin Fund II, LLC. *Id.* § 1.2. The company invested in mortgages and distributed profits to the Members in proportion to the number of units owned. *Id.* § 1.4. The LLC registered its investments with the Securities and Exchange Commission, but the units were not publicly traded. Compl. ¶ 8; Shustek Decl. ¶ 2. Plaintiff Michael Shustek is the Chief

---

[1] The motion was fully briefed before it was transferred to this Court. The Court deems the motion suitable for decision without oral argument. Civil Local Rule 7.1(d)(1).
The parties waived any potential conflict arising from my involvement in the case as a Magistrate Judge prior to my appointment as a District Judge.

Executive Officer of each Vestin corporation. Shustek Decl. ¶ 1; Def.'s Ex. 9. Defendant Klaas was "one of many individuals ("Members") who invested retirement savings" in the LLC. Klaas Decl. ¶ 7; Def.'s Ex. 4 ¶ 2. Plaintiff Vestin Mortgage, Inc. was the Manager of the LLC. Def.'s Ex. 2 § 2.21. The Manager's duties were set forth in the Operating Agreement, *id.* Art. 3, which was filed with the Nevada Secretary of State as the Articles of Organization. *Id.* § 1.5. The Manager has "exclusive control over the business of the Company . . . including the power . . . to determine how to invest the Company's assets." *Id.* § 3.1. "The Manager has fiduciary responsibility for the safekeeping and use of all funds and assets of the Company." *Id.* § 3.4.

One of the rights enjoyed by Members was access to books and records. *Id.* § 6.5. "The Members and their designated representatives shall have access to books and records" of the LLC during regular business hours. One such record was "[a]n alphabetical list of the names, addresses and business phone numbers, to the extent such are available, of all Members together with the number of units held by each of them." *Id.* (hereinafter "Members List"). The Operating Agreement further specifies that "[t]he Company shall make the [Members] list available on request to any Member or his representative for a stated purpose including, without limitation, matters relating to Members' voting rights, tender offers, and the exercise of Members' rights under federal proxy law." *Id.* If the Manager fails to provide the requested list in ten days, the Member can obtain a court order to compel its production and recover attorney's fees. *Id.* The Operating Agreement imposed one restriction: "the Company need not exhibit, produce or mail a copy of the Member list if the actual purpose and reason for the request therefor is to secure the list or other information for the purpose of selling the list or copies thereof, or of using for a commercial purpose other than in interest of the Person as a Member in the Company." *Id.* The Manager has the right to ask the Member "to represent that the list is not requested for any commercial purpose." *Id.*

These provisions mirror the rights of members in an LLC found in the Nevada statutes that govern limited liability companies. By law, every LLC "shall" keep a "current

list of the full name and last known business address of each member." Nev. Rev. Stat. § 86.241(1)(a). "Each member of a limited-liability company is entitled to obtain [the Members List] from the company, from time to time upon reasonable demand, for any purpose reasonably related to the interest of the member as a member of the company." *Id.* § 86.241(3). The statute requires the member to demand access in writing and to "state the purpose of such demand." *Id.* § 86.241(6). These rights "may be restricted or denied entirely in the articles of organization or in an operating agreement adopted by all members . . . or in any subsequent amendment adopted by all of the members at the time of the amendment." *Id.* § 86.241(8).

In 2005, the Vestin LLC decided to convert the business into a real estate investment trust ("REIT") in order to make the units easier to sell. Shustek Decl. ¶ 2; Def.'s Ex. 4 ¶ 3 (proxy statement recommended conversion). Klaas opposed the plan and discussed his concerns with Shustek. Klaas Decl. ¶ 10; *see* Def.'s Ex. 5 ¶ 6 (describing Klaas as "a very outspoken activist investor" who "operated a popular blog and website describing Vestin wrongdoing"). During a May 20 telephone conversation, Klaas requested a copy of the Members List. Def.'s Ex. 4 ¶ 4. Shustek required Klaas to submit a sworn affidavit that he would not use the "list to solicit investors in any venture and that the list will only be used to conduct the business of Vestin Fund II, LLC." Compl. Ex. A. Klaas submitted a notarized letter, dated May 21, 2005, that further stated "[t]he purpose of this request is to provide members with additional information" about the REIT conversion, a petition to dissolve the LLC, and/or to replace the Manager. *Id.* (hereinafter "May 21 Letter/Affidavit"). Shustek sent the Members List to Klaas. Shustek Decl. ¶ 5. In June 2005, Klaas used the list to contact other Members in an attempt to persuade them to vote against the REIT conversion. Klaas Decl. ¶ 14. His campaign failed, and in early 2006, the LLC converted into Plaintiff Vestin Realty Mortgage II, Inc., a publicly traded investment company. Shustek Decl. ¶ 2.

In April 2006, Klaas used the Members List to invite other investors to join him in suing the Vestin entities for breach of contract, fraud, and breach of fiduciary duty in

connection with the REIT conversion. Def.'s Ex. 4 ¶ 13; Pls.' Ex. C (sample letter). In the letter, Klaas explained that he had hired an experienced law firm. Klaas acted as the representative for the plaintiffs, for example, he sent email updates and collected checks for the client trust fund. Def.'s Ex. 8 ¶¶ 3-4; Pls.' Exs. Q & R (describing "Klaas as unpaid staff assistant" to collect fees and costs from co-plaintiffs for the law firm). In the letter, he described the factual and legal basis for the suit, expected remedy, and settlement strategy. Pls.' Ex. C. Klaas stated that only a limited number of plaintiffs would be allowed to join the suit. *Id.* If a Member wanted to join the litigation, he would pay an administrative fee (in proportion to the number of shares owned) to cover initial litigation expenses and as well as his "fair share" of the attorney's fees. *Id.*; Pls.' Ex. M (Depo. at 46). A few months later, in September 2006, Klaas and nearly 130 other Members sued Vestin in Nevada State Court. Def.'s Ex. 4 ¶¶ 14-15. The investors sought damages for the loss of value in their Vestin investments. *Id.*

In the interim, another Member, Charles Felton, hired Thomas Frost, an attorney in San Diego, to sue Vestin for using deceptive sales practices.[2] *Id.* ¶ 16; Def.'s Ex. 6 (Depo. at 36). In May 2006, Frost contacted Klaas to ask if he would testify against Vestin, and they discussed their prospective cases. Def.'s Ex.4 ¶ 16; Def.'s Ex. 5 ¶ 6; Def.'s Ex. 6 (Depo. at 26-27 & Ex. 20) (May 17 email). When Frost stated he would be taking Shustek's deposition soon, Klaas asked for a copy of the transcript. Def.'s Ex. 4 ¶ 16; *cf.* Def.'s Ex. 6 (Depo. at 38-39) (Frost volunteered to give the deposition to Klaas). Soon thereafter, Frost asked Klaas for a copy of the Members List. Def.'s Ex. 4 ¶ 18; Def.'s Ex. 5 ¶ 8; Def.'s Ex. 6 (Depo. at 39). Frost explained that Shustek had been slow to produce it, even though Shustek had promised to send the information during his deposition on May 18. Def.'s Ex. 4 ¶ 18; Def.'s Ex. 6 (Depo. at 47 & Ex. 20) (May 25 email) ("time is of the essence"). Frost further stated that his client was "entitled" to the Members List. Def.'s Ex. 6 (Depo. at 44-45 & Ex. 20) (May 25 email cites Operating Agreement); Pls.' Ex. K

---

[2] Frost was a partner in a law firm with Edwin Shustak – not to be confused with the similar name of Plaintiff Michael Shustek.

1  (Depo. at 113).  During his deposition for the current case, in 2008, Klaas was asked if
2  Frost paid for the Members List, and Klaas testified "[i]t was some barter."  Pls.' Ex. I
3  (Depo. at 174); *cf.* Def.'s Ex. 6 (Depo. at 59-60) (Frost testified there was no agreement to
4  pay for either document); Def.'s Ex. 7 (Depo. at 47) (Klaas testified he was not paid for the
5  list).  Ultimately, Klaas sent a copy of the Members List to Frost, and Frost sent Klaas a
6  copy of Shustek's deposition transcript.  Def.s' Ex. 5 ¶¶ 8, 10; Def.'s Ex. 6.  Frost's law
7  firm used the list to "reach out" to other investors who might want to join the class action
8  lawsuit against Vestin.  Def.'s Ex. 6 (Depo. at 52, 55); Pls.' Ex. H.  In October 2006, Frost
9  filed a lawsuit on behalf of his clients in California Superior Court.  Def.'s Ex. 4 ¶ 20; *see*
10 Pls.' Exs. P & U.

11 In October 2008, Plaintiffs filed this diversity complaint seeking relief on seven
12 state law theories:  breach of contract, breach of the covenant of good faith and fair dealing,
13 intentional misrepresentation, negligent misrepresentation, conversion, misappropriation of
14 trade secrets, and interference with business interests.  Doc. No. 1.  Each theory arises out
15 of Klaas' alleged misuse of the Members List by contacting other Members to join his
16 Nevada lawsuit and giving it to the lawyer who was pursuing a similar lawsuit in
17 California.

18 Klaas moves for summary judgment on all claims because "Klaas' sharing of the
19 Members List was perfectly within his rights under both the Operating Agreement and the
20 Nevada LLC Act.  Further, the only people whom Mr. Klaas shared the Members List were
21 all independently entitled to receive the Members Lists themselves, either by virtue of their
22 status as fellow Members or the legal representative thereof."  Def.'s Br. at 7.

### **Discussion**

24 Summary judgment is appropriate when the "pleadings, depositions, answers to
25 interrogatories, and admissions on file, together with the affidavits, if any, show that there
26 is no genuine issue as to any material fact and that the moving party is entitled to judgment
27 as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
28 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for

discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Plaintiffs' theory is that Klaas misused the Members List, which is a valuable trade secret.[3] Plaintiffs spent more than twenty million dollars and ten years of work to develop the list. Shustek Decl. ¶ 3. "Using this Client List, Vestin was able to raise approximately half of a billion dollars in just a few years." *Id.* Shustek estimates the list could be sold to a competitor for "millions of dollars." *Id.*

Using the first cause of action as an example, Plaintiffs allege that the May 21 Letter/Affidavit was a contract, and that Klaas breached his promise that he would not use the information in "any venture" because he used it for "his own personal gain" instead of using it to "conduct the business of Vestin Fund II, LLC." Compl. ¶¶ 2, 19, 22(a)-(b). After the REIT conversion, Klaas mailed a letter to Members on the list inviting them to join his lawsuit. Pls.' Ex. C. Plaintiffs characterize the letter as an "advertisement" for the law firm hired by Klaas. Shustek Decl. ¶ 7.

Plaintiffs allege that a second breach occurred when Klaas "sold the list" to Frost by exchanging it for a copy of Shustek's deposition. Compl. ¶¶ 4, 22(c). Plaintiffs emphasize that Klaas himself labeled the exchange as a "barter" and hence a sale.

Plaintiffs assert that Klaas' conduct "led directly to the filing of two separate lawsuits against Vestin," which forced it to expend over one million dollars to hire attorneys to fight the frivolous lawsuits. Compl. ¶¶ 23-24. Each of the other theories

---

[3]Plaintiffs state that a Nevada court "expressly held that Vestin's Client List was a trade secret." Opp. Br. at 4. This is misleading. The Decision and Order in the Nevada case was filed in 1997, years before the current LLC was formed; the defendant was a competitor; and involved an "investor list" that was "not readily ascertainable by proper means." Pls.' Ex. A.

includes the same allegation.  Compl. ¶¶ 30-31 (breach of covenant of good faith and fair dealing), 37-38 (intentional misrepresentation), 45-46 (negligent misrepresentation), 50-51 (conversion), 56-57 (trade secrets), & 59-62 (interference with business interest).  Shustek states that some clients withdrew their investments with Vestin.  Shustek Decl. ¶ 12.

Klaas argues that Plaintiffs have failed to present any evidence to support their bald accusation that his use of the Members List caused any of Plaintiffs' alleged damages.  The Court agrees.  Klaas, like every other Member who invested money with the Vestin LLC, had a contractual and statutory right to obtain a list of the investors with their names and contact information.[4]  Def.'s Ex. 2 § 6.5; Nev. Rev. Stat. § 86.241(1), (3).  The right of access expressly extended to a Member's representative, such as the lawyers Klaas and others hired.  Def.'s Ex. 2 § 6.5.  Both Operating Agreement and the Nevada statute allowed Klaas to use the membership information to protect his financial interest in the LLC.  Def.'s Ex. 2 § 6.5 (any "purpose including, without limitation" matters relating to a Member's interest in Vestin); Nev. Rev. Stat. § 86.241(e) ("any purpose reasonably related to the interest of the member as a member of the company").  The Members have an undoubted, valid interest in ensuring their investments are properly managed.  The lawsuits filed in Nevada and California by hundreds of Members challenged the management of the Vestin funds.

The Court further finds that Klaas did not breach his promise not to use the Members List for a commercial purpose.  Plaintiffs' attempt to label Klaas' activities as a competitive business venture fails as a matter of law.[5]  *Scott v. Rosenberg*, 702 F.2d 1263, 1271 (9th Cir. 1983) (granting summary judgment when party presented merely conclusory allegations that were not supported by a factual presentation); *accord Sicor Ltd. v. Cetus*

---

[4]The Court agrees with Klaas that the May 21 Letter/Affidavit is not a contract because the element of consideration is lacking.  Klaas was already entitled to a copy of the Members List.  This simple fact also defeats Plaintiffs' claims for breach of the covenant of good faith, conversion, and misappropriation.

[5]Nor did Klaas mislead Plaintiffs about his reason for obtaining the list or his intended use. This fact entitles Defendant to summary judgment on Plaintiffs' intentional and negligent misrepresentation claims as well as the other claims that rely on "improper" conduct.

1  *Corp.*, 51 F.3d 848, 860-61 (9th Cir. 1995).  Klaas properly used the list to pursue legal
2  action against Vestin for allegedly breaching its duties to the investors.  That Vestin
3  eventually won both lawsuits does not diminish Klaas' inalienable right to sue the LLC to
4  protect his financial investment.  Klaas was firmly within his rights to contact other
5  investors about his concern that Vestin had breached its duties and to invite them to pursue
6  legal action.[6]

In an attempt to defeat the motion, Plaintiffs argue Klaas personally benefitted from using the Members List because he had a special financial arrangement with the law firm in the Nevada suit.  Plaintiffs have not produced any evidence to support this allegation. *Anderson*, 477 U.S. at 247-52; *Celotex*, 477 U.S. at 322-24; *Sicor Ltd. v. Cetus Corp.*, 51 F.3d at 860-61 ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.") (internal quotation marks and citation omitted); *Scott*, 702 F.2d at 1271.  The record shows that Klaas retained the law firm and split the initial retainer fee with a co-plaintiff.  As other Members joined the lawsuit, they also contributed funds to cover expenses and attorney's fees and Klaas was reimbursed proportionately.

In a similar vein, Plaintiffs argue that Klaas sold the Members List to Frost in exchange for a copy of Shustek's deposition in the California lawsuit.  Plaintiffs label that transaction as commercial.  *Anderson*, 477 U.S. at 247-52; *Celotex*, 477 U.S. at 322-24; *Sicor*, 51 F.3d at 860-61; *Scott*, 702 F.2d at 1271.  This argument fails because the California attorney had the legal right to obtain a copy of the Members List in his role as counsel for another Member who wanted to sue Vestin for breaching its investment responsibilities.  Def.'s' Ex. 2 § 6.5 (right to list extends to "any Member or his representative").  Using the list to contact other investors who might seek redress in court is not the equivalent of a "commercial purpose," *id.*, even if the litigants cooperated and exchanged information for their mutual benefit in those lawsuits.

---

[6]This fact entitles Klaas, as a matter of law, to entry of judgment on the seventh cause of action for interference with a business interest.

1  In sum, Klaas' use of the Members List was proper.  The evidence supports only one reasonable conclusion.  Plaintiffs have not shown that Klaas' conduct proximately caused Vestin's damages on any theory of relief or otherwise meets the essential elements of the seven causes of action.

## Conclusion

The Court **GRANTS** Defendant's motion for summary judgment on all claims.  The Clerk shall terminate this civil action.

DATED:  March 27, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge